JOURNAL ENTRY AND OPINION
This is an appeal from an order of Cleveland Municipal Judge Joseph Zone that denied appellant Melissa Brown's motion to dismiss a charge of soliciting prostitution. She claims that because the appellee, City of Cleveland ("City"), failed to obtain a video or audio tape of the sting operation that led to her arrest, her due process rights were violated. We disagree and affirm.
On July 10, 2001, Brown, then thirty-two years of age, was arrested and charged with a violation of Cleveland Codified Ordinance ("C.C.O.") 619.09, which makes the solicitation of another to engage in sexual activity for hire a misdemeanor of the first degree. From the record we glean that she entered an undercover car, engaged in a conversation with a police officer and, although the exact words spoken are in dispute, the officer claimed that she offered him sexual favors in exchange for a modest fee and he arrested her. Prior to trial, she moved to dismiss the charge on the ground that she was denied the ability to demonstrate her innocence because the police officer did not document their conversation through audio or video tape recording, and absent such evidence, she could not present proof of possible entrapment.
The judge denied her motion, she pleaded no contest to the charge and was found guilty and sentenced to thirty days jail. Her sentence was stayed pending the resolution of this appeal. She asserts, in one assignment of error:
 THE TRIAL COURT SHOULD HAVE DISMISSED THE ONE COUNT OF SOLICITING BECAUSE THE FAILURE OF THE GOVERNMENT TO OBTAIN A VIDEO OR AUDIO RECORDING OF THE ALLEGED STING OPERATION WAS A VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS OF LAW.
Brown alleges that, because she is a suspected prostitute who challenges the testimony of a police officer, without the physical preservation of her conversation with her accuser which is the foundation of the charge against her, it is impossible for her to persuade a judge or jury that either she did not solicit sex for hire or the police officer impermissibly induced her to do so. She contends that the failure to record her conversation undermines the fundamental fairness of the proceedings against her, in violation of due process of law guaranteed by the Fourteenth Amendment to the United States Constitution and analogous Article I, Section 16 of the Ohio Constitution. The City counters that the Bill of Rights does not include, nor can it logically be extended to include, a requirement that police record the events in an undercover prostitution "sting" operation.
"Whether rooted directly in the Due Process Clause of theFourteenth Amendment, * * * or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, * * * the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."[1] In support of her contentions, Brown directs us to Arizonav. Youngblood[2] for the proposition that police have a due-process-rooted duty to preserve potentially exculpatory evidence. InYoungblood, the prosecution failed to preserve clothing containing supposed semen samples which, the defendant argued, could have been helpful to his defense against the allegation that the semen connected him to a sexual crime. In ruling that no duty attached to the prosecution's preservation of physical evidence already in its hands, the United States Supreme Court unambiguously held that, "* * * unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."[3] Since Brown alleges here that the police failed to physically collect the evidence of her conversation, rather than preserve it, Youngblood appears inapplicable. Moreover, she has alleged no evidence of bad faith on the part of the police department in failing to preserve her conversation mechanically except that the failure to even record it was calculated to avoid discovery of exculpatory evidence.
Brown also directs us to California v. Trombetta,[4] for the proposition that the police have a duty to permanently preserve transient evidence, such as the sound waves comprising her conversation with the police officer, so that she may later analyze it for potentially exculpatory components. Trombetta, however, involved the failure of police to preserve the breath sample of defendants charged with DUI offenses, where the charges were substantiated, in part, by breathalyzer results obtained directly before arrest. The United States Supreme Court stated that, in order for the failure of the police to preserve evidence to rise to the level of a due process violation, "[t]he evidence must possess an exculpatory value that was apparent before it was destroyed, and must also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[5]
Here, Brown could test the veracity of the police officer who alleged that she solicited him for paid sex through cross-examination, and she may testify as to her recollection of the conversation. The contents of the conversation have not been "lost," but rather, the conversation is preserved in her memory and that of the officer. Trombetta does not advance Brown's cause.
The basic flaw in Brown's premise is the contention that, because her accuser is a police officer and she an alleged demimondaine, asserting her credibility or the officer's mendacity at trial is impossible. This flawed assumption ignores the bedrock presumption in American jurisprudence that a criminal defendant is innocent until proven guilty and assumes that merely being charged with soliciting constitutes a conviction before trial. She also presupposes that the testimony of a police officer will be given greater credibility because of his status in law enforcement, and ignores the standard limiting jury instruction cautioning jurors that a police officer is not to be considered to be more or less credible than an ordinary citizen by virtue of his employment status. As a general proposition, where conflicting testimony can support a verdict in favor of either the prosecution or defense, the task of deciding who to believe falls squarely on the shoulders of the finder of fact, whether the competing witnesses are police officers or laymen.[6] This duty is precisely that which Brown claims to be impossible to fulfill, without a tenable underlying reason why.
She attempts, using her personal construction ofYoungblood and Trombetta, to assert a theory of "constructive possession" of evidence. She asserts that if the police have reasonable access to technology capable of capturing potentially exculpatory evidence involving a suspect of a crime, they must use such technology in gathering evidence. If a defendant can demonstrate bad faith in the failure to use such technology, she concludes, the potential evidence foregone must be considered to be impermissibly withheld. In such circumstances Brown would characterize "bad faith" to mean the refusal to employ readily available technological means (such as an audio tape recorder) to collect the evidence as a tactic to frustrate a defendant's basic ability to present a defense.
This argument fails for two reasons. First, Youngblood andTrombetta, contrary to Brown's circular argument, only establish a constitutional violation of due process rights if a defendant can establish that existing evidence was not preserved in circumstances amounting to prosecutorial "bad faith." The audio tape, by default, does not exist, and Brown's recollection of the conversation unquestionably does; she has also made no showing of bad faith on the part of the Cleveland police in not recording her conversation with the officer posing as a "John." Secondly, there is no constitutionally imposed duty to obtain evidence by employing any specific technological means.[7] In fact, in Youngblood, the United States Supreme Court, in addressing a lower court opinion questioning the State of Arizona's failure to test the evidence at issue utilizing a newer, presumably more precise or reliable test, stated,
 If the [lower Arizona] court meant by this statement that the Due Process Clause is violated when the police fail to use a particular investigatory tool, we strongly disagree. The situation here is no different than a prosecution for drunken driving that rests on police observation alone; the defendant is free to argue to the finder of fact that a breathalyzer test might have been exculpatory, but the police do not have a constitutional duty to perform any particular tests.[8]
Accordingly, there was no constitutional requirement that the police officers use any type of audio recording equipment in gathering evidence against Brown.
The City, on the evidence presented to it by the officer, decided to press its case against her. At that point, her responsibility became to dispute the charges if she so desired, which neither the character of the testimonial evidence against her nor her status as a woman accused of a crime prevented her from doing. This assignment of error is without merit.
Judgment affirmed.
It is ordered that the appellee recover from appellant costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] United States v. Scheffer (1998), 523 U.S. 303, 330,118 S.Ct. 1261, 1275, 140 L.Ed.2d 413, 432, Stevens, J., dissenting (internal cites omitted); see, also, California v. Trombetta (1984), 467 U.S. 479, 485,104 S.Ct. 2528, 2532, 81 L.Ed.2d 413, 419.
[2] (1989), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281.
[3] Arizona v. Youngblood (1989), 488 U.S. 51, 59, 109 S.Ct. 333,338, 102 L.Ed.2d 281, 289.
[4] (1984), 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413.
[5] California v. Trombetta, supra, at syllabus, paragraph (b).
[6] State v. Gore (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125,cited in State v. Odorizzi (Mar. 14, 2001), Belmont App. No. 98-BA-5, in which a court, at bench trial, was required to evaluate the credibility of an accusing state trooper versus the credibility of the defendant.
[7] "Similarly, the failure to employ alternative methods of testing blood-alcohol concentrations is of no due process concern, both because persons are presumed to know their rights under the law and because the existence of tests not used in no way affects the fundamental fairness of the convictions actually obtained." Trombetta, supra, at 491-492,104 S.Ct. 2528, 2535, 81 L.Ed.2d 413, 423, O'Connor, J., concurring; see, also, California v. Frye (Cal. 1998), 18 Cal.4th 894, 943, 959 P.2d 183,206: * * * [A]s a general matter, due process does not require the police to collect particular items of evidence."
[8] Youngblood, supra, at 59, 109 S.Ct. at 338,102 L.Ed.2d at 289.